# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

OMAR AWAD,
    *Plaintiff*,

    v.

C/O MOSKITES *et al.*,
    *Defendants*.

No. 3:18-cv-01167 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Omar Awad is a prisoner in the custody of the Connecticut Department of Correction at Garner Correctional Institution in Newtown, Connecticut. Proceeding *pro se* and *in forma pauperis*, on July 16, 2018, he filed a civil complaint under 42 U.S.C. § 1983 against several correctional officials for violating his constitutional rights. Doc. #1. Awad then filed four motions to amend his complaint, *see* Doc. #10; Doc. #15; Doc. #27; Doc. #29, all of which I denied because they consisted of piecemeal amendments to his initial complaint and did not include a properly formatted amended complaint. *See* Doc. #28; Doc. #30.

On December 3, 2018, Awad filed an amended complaint against 23 correctional officials and affiliated departments: Officers Moskites, Dane, and Todd LaPlace; Counselor Zentek; Captain Gallo; Warden John Alves; Deputy Wardens Daniel Borges and Thomas Hunt; six John Doe correctional officers; Doctors Gerald Velletta and Ricardo Ruiz; the University of Connecticut Health Center, University of Connecticut Health Center Correctional Managed Health Care ("CMHC"); another four hospital-affiliated John Does; and Commissioner Scott Semple. Doc. #31 at 1–2, 19–20 (¶¶ 20–23). Awad alleges that the defendants violated his Eighth Amendment protection against cruel and unusual punishment and his Fourteenth Amendment rights under the Equal Protection and Due Process Clauses. *Id.* at 22 (¶¶ 1–3). I now review that

complaint pursuant to 28 U.S.C. § 1915A, and will dismiss all of the complaint except for Awad's claim against Zentek for deliberate indifference to his safety.

## BACKGROUND

The following facts are alleged in the amended complaint and are accepted as true only for purposes of this ruling. Sometime around late August 2015 Awad was incarcerated at Manson Youth Institution. *Id.* at 9, 12 (¶ 1, 31). While Awad was on lockdown, Counselor Zentek called Awad into his office so that Awad could make a legal call. *Id.* at 12 (¶ 31). While Awad was in the office, he told Zentek that "someone on the high side (cells 7 through 12) [had been] threatening [sic] him and . . . that he d[id] not feel safe." *Ibid.* (¶ 32).

About three weeks later, at approximately 11:00 a.m. on September 16, 2015, Awad was asleep in his cell in D Cottage at Manson. *Id.* at 9 (¶ 1). His cellmate had left his cell to go to lunch while he was sleeping. *Id.* (¶ 2). A short time later, Awad was suddenly awoken by a slap to his right ear and a man pressing his weight against Awad's chest so hard that it made it difficult for him to breathe. *Id.* (¶ 3). The individual then pulled the bedsheet over Awad's head and began to beat him with closed fists, causing Awad to lose consciousness and damaging his face. *Id.* at 10 (¶¶ 4–5). The assault continued "until the doors opened for the end[] of the lunch period." *Ibid.* (¶ 6). When he regained consciousness, Awad managed to push the individual off him, and the individual then ran out of the cell. *Ibid.* (¶ 7). The individual who assaulted him was later identified as another inmate named Isaiah Crespo. *Ibid.* (¶ 9).

When Awad looked in the mirror, he discovered that his nose had "shifted to the right," his left eye was "swollen shut," he could not hear out of his right ear, and he had several cuts and bruises to his face. *Ibid.* (¶ 8). He also vomited several times, which indicated to him that he had suffered a concussion. *Ibid.* (¶ 10).

Two days later, Officer LaPlace came to Awad's cell and discovered what had happened to him. *Id.* at 11 (¶ 11). Laplace escorted Awad to the medical unit where he was assessed by a nurse. *Ibid.* (¶ 12). Awad informed two correctional officials in the medical unit who are not named as defendants what had happened, that he was afraid to leave his cell, and that he did not report the incident immediately because he was afraid of how inmate Crespo might respond. *Ibid.* (¶¶ 13–14).

Officials then brought Awad to the emergency room at the UConn Health Center. *Ibid.* (¶ 15). There, clinical officials confirmed that Awad had suffered damage to his left eye and right ear, and had also suffered a deviated septum. *Ibid.* (¶ 16). Awad also discovered that he had suffered damage to his jaw, which hurts when he eats, and that his nose had been broken. *Ibid.* He continues to suffer pain in his back, neck, and the left side of his face. *Ibid.* (¶ 17).

On September 19, Awad returned to Manson and remained in the medical unit for approximately one week until he was stable enough to return to his housing unit. *Ibid.* (¶ 18). He was provided with pain medication, but he continues to suffer physical and emotional distress from the assault. *Ibid.* (¶¶ 18–19).

Awad contends that Manson staff had failed to undertake a number of their duties when he was assaulted. *Ibid.* (¶ 20). He asserts that it is their job to perform daily cell inspections and ensure that (1) all cell doors are secured during meal times, (2) all inmates are seated during meal times, and (3) all inmates are in their assigned cells. *Ibid.* Their failure to fulfill those obligations permitted inmate Crespo to assault him, which Awad argues constitutes "cruel and unusual punishment." *Ibid.* (¶¶ 20–21). He alleges that, had the Manson officials "done the[ir] job and stuck to the rule[s] . . . [the assault] could have been avoided." *Ibid.* (¶ 21).

When Awad reviewed the reports that had been generated from the assault, he discovered that Officers Moskites and Dane had been assigned to D Cottage at Manson at the time of the assault. *Id.* at 12 (¶¶ 24–26). John Does 1–6 also worked in the same unit at Manson around the time of the assault. *Id.* at 13 (¶ 40). They "were well aware of [Awad's] injuries but refused . . . to report the incident [sic] and protect [him]." *Ibid.* (¶ 41). Both Moskites and Dane wrote statements in response to a request from Captain Gallo, who supervises D Cottage. *Id.* at 12 (¶¶ 27–28). Gallo conducted an investigation and asked Moskites, Dane, and Counselor Zentek to write reports detailing the assault. *Ibid.* (¶ 29).

Inmate Crespo ultimately admitted to Gallo that he had entered Awad's cell during lunchtime on September 16 but falsely claimed that Awad had hit him first. *Ibid.* (¶¶ 33–34). Officials issued Crespo a disciplinary ticket for the assault but did not issue one to Awad. *Ibid.* (¶ 36). Crespo pleaded guilty to threatening and assaulting Awad. *Ibid.* (¶ 37).

Some time later, Awad submitted a Freedom of Information Act request for the incident report and the names of all staff members present during the assault, but the response he received redacted the names of the officials involved. *Ibid.* (¶ 39). Awad was later transferred from Manson to Cheshire Correctional Institution and then to Garner Correctional Institution. *Id.* at 13 (¶ 42).

Awad alleges that Dr. Velletta, who supervises the medical departments at Manson and Garner, is refusing to provide him with medical joint braces for the injuries he sustained from the assault. *Id.* at 6 (¶ 18), 13 (¶ 45). Dr. Ruiz, who supervises the medical department at Cheshire, stopped prescribing pain medication for Awad and refused to see him, which caused Awad to endure extreme pain from his injuries. *Id.* at 6 (¶ 19), 13 (¶ 46), 18 (¶ 17). Both doctors "failed to

provide I the plaintiff with the ad[e]quate medical attention I am entitled to as an inmate to 'community standards.'" *Id.* at 18 (¶¶ 16–17).

Awad alleges that Moskites, Dane, LaPlace, Zentek, Gallo, Alves, Borges, Hunt, and John Does 1–6 in their individual and official capacities failed to protect him from that assault he suffered at Manson, all in violation of his Eighth Amendment right against cruel and unusual punishment. *Id.* at 14–17 (¶¶ 2–15). Awad alleges that Velletta, Ruiz, the UConn Health Center, CMHC, and the remaining John Does were deliberately indifferent to his serious medical needs, all in violation of the Eighth Amendment. *Id.* at 18–19 (¶¶ 16–23). Awad alleges that Commissioner Semple failed to supervise the safety of operations and failed to provide quality healthcare and adequate medical attention. *Id.* at 20–21 (¶ 24). Awad also raises claims under the Fourteenth Amendment Equal Protection Clause and Fifth Amendment Due Process Clause against all defendants. *Id.* at 22 (¶¶ 1–4).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to

plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### Claims against state entities

I will begin by dismissing the claims against the University of Connecticut Hospital and Correctional Managed Health Care. Because both are state entities, neither of them is subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Awad also claims to sue all the remaining defendants in their individual and official capacities. *See* Doc. #31 at 3–7 (¶¶ 4–26). All remaining defendants are also state employees. *Id.* at 7–8 (¶ 27). The Eleventh Amendment prevents Awad from maintaining a suit for money damages against state employees in their official capacities, *see, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985), so to the extent that Awad seeks such relief, I will dismiss those official-capacity claims as well. I now turn to the claims against the remaining defendants for money damages in their individual capacities, as well as for declaratory relief.

### Deliberate indifference to safety

Awad alleges that numerous defendants violated his Eighth Amendment right against cruel and unusual punishment by leaving him vulnerable to assault at Crespo's hands. "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Awad alleges that three weeks before the assault, he spoke to Zentek in his office and told him that another inmate had been threatening him and that he did not feel safe. Doc. #31 at 12 (¶¶ 31–32). In response, Zentek allegedly "did not do anything." *Id.* (¶ 32). These allegations are enough at the initial pleading stage to support the claim that Zentek was aware of a direct threat to Awad's safety and then that he chose to do nothing to remedy it. I will therefore permit the Eighth Amendment failure to protect claim to proceed against Zentek in his individual capacity.

I will not allow the claim to proceed against any of the other defendants, because Awad has not alleged any facts indicating that they knew of any threat to harm him. Liability under § 1983 requires the personal involvement of each individual held liable. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). The other defendants either worked in D Cottage at the time of the assault or supervised Zentek, but none are alleged to have known about the danger that Crespo posed prior to the attack. *See* Doc. #31 at 12–13 (¶¶ 27–28, 39–41).

Awad alleges that some officers were negligent in carrying out their jobs prior to the assault, *id.* at 11 (¶ 20–21), but even if I construe this allegation of "negligence" as one of recklessness, Awad does not allege that the officers knew of the danger that Crespo posed to him and chose to ignore it. Awad further alleges that some officers failed to take action after the assault, *id.* at 13 (¶ 41), but he also alleges that when LaPlace discovered what had happened, he

proceeded to escort Awad to the medical unit straightaway. *Id.* at 11 (¶¶ 11–12). Thus, aside

from Zentek, Awad has failed to allege sufficient facts to suggest that any other named defendant

was aware of a threat of harm from Crespo and failed to protect him from that threat.

Accordingly, I will allow Awad's claim of deliberate indifference to safety proceed as to Zentek

alone but not as to any other defendant.

### *Deliberate indifference to serious medical needs*

Awad has sued both Ruiz and Velletta for ignoring his serious medical needs by stopping

his pain medication at Cheshire and failing to prescribe joint braces for his injuries from the

assault. *Id.* at 13 (¶¶ 44–46). The Supreme Court has held that a prison deliberate indifference to

the serious medical needs of a prisoner amounts to a violation of the Eighth Amendment. *See*

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The Second Circuit has in turn made clear that a prisoner who claims deliberate

indifference to a serious medical need must satisfy two requirements. First, there is an *objective*

requirement—that the prisoner's medical need was sufficiently serious. *See Spavone v. N.Y. State*

*Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The prisoner must show that he suffered

from an urgent medical condition involving a risk of death, degeneration, or extreme pain. *See*

*Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Second, there is a *subjective* requirement:

that the defendant have acted recklessly—that is, with an actual awareness of a substantial risk

that serious harm to the prisoner would result from the defendant's action or non-action. *See*

*Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical

malpractice. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Hathaway v.*

*Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Instead, a prisoner must show that the defendant

acted with the equivalent of a criminally reckless state of mind when denying treatment for the prisoner's medical needs. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Assuming Awad's medical condition to be sufficiently serious, he does not allege facts to show that either Dr. Velletta or Dr. Ruiz were recklessly indifferent to his medical needs. "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hill*, 657 F.3d at 123.

Awad's allegations about both doctors are very sparse and do not identify any particular dates or interactions that he had with them. As to Dr. Velletta, Awad alleges only that at some point in time he would not prescribe joint braces and in violation of "community standards." These facts may establish negligence or medical malpractice but do not more likely reflect deliberate indifference. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 378; *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (affirming dismissal of intentional discrimination claim where factual allegations showed it was "equally possible that plaintiffs have not been promoted for valid, non-discriminatory reasons").

Similarly, as to Ruiz, Awad alleges only he stopped pain medication and refused to see him on some unspecified date or dates, but without any additional facts that would reasonably suggest that Dr. Ruiz's actions were the product not merely of a difference of opinion about treatment or simple neglect but of reckless indifference to Awad's medical needs. *See Hill*, 657 F.3d at 123 (affirming dismissal of complaint where facts equally consistent with reasonable difference of medical opinion or medical negligence as deliberate indifference).

Accordingly, Awad has not alleged facts that give rise to plausible grounds for relief against either Dr. Velletta or Dr. Ruiz. To the extent that Awad means to claim that Commissioner Semple or any of the John or Jane Doe defendants also denied him medical care, *see id.* at 19–20 (¶¶ 20–23), he has alleged no facts explaining how these defendants were personally involved in doing so, and so I will dismiss all of Awad's claims of deliberate indifference to his serious medical needs.

### Equal protection

Awad claims that defendants deprived him of his rights under the Equal Protection Clause of the Fourteenth Amendment. Doc. #31 at 22 (¶¶ 1, 3–4). The Equal Protection Clause protects prisoners from wrongful discrimination. The provision does not mandate identical treatment for each individual but only that the government treat people in similar situations the same way. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To state an Equal Protection claim, Awad would have to allege that he was treated differently from other similarly situated individuals, and that the reason for that different treatment was intentional discrimination. *See Phillips v. Girdich*, 408 F.3d 123, 129 (2d Cir. 2005). Awad's complaint contains no allegations describing how he was intentionally treated differently than other inmates, so I will dismiss his Equal Protection claim.

### Due process

Awad also claims that defendants violated his rights under the Fourteenth Amendment's Due Process Clause.[1] Doc. #31 at 22 (¶¶ 1, 3–4). The Supreme Court has recognized that the prison context represents a break from the general rule that the state has no duty under the

---

[1] Awad also claims that defendants violated his Fifth Amendment due process rights. *See* Doc. #31 at 22 (¶¶ 1, 3–4). Because the Fifth Amendment applies to the federal government rather than to the states, I will construe Awad's claim as only meaning to proceed under the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

Fourteenth Amendment to protect individuals from private violence. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197–200 (1989). But it is also well-established that, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claim[].'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the Eighth Amendment specifically governs Awad's right to be free from deliberate indifference to his safety and serious medical needs, there is no basis for a generalized due process claim under the Fourteenth Amendment. *See, e.g.*, *Torres v. McGrath*, 2016 WL 1948806, at *4 (D. Conn. 2016).

## CONCLUSION

In accordance with the foregoing analysis, I hereby enter the following orders:

(1)     The Eighth Amendment claim for deliberate indifference to safety may proceed against Zentek in his individual capacity for damages. All other claims are dismissed without prejudice. In the event that Awad believes in good faith that he can plead facts to cure the deficiencies described in this ruling, then Awad may file another amended complaint by **February 4, 2019**. The Clerk is directed to terminate all defendants except for Zentek.

(2)     The Clerk shall verify the current work address for Zentek with the Department of Correction's Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (Doc. #31) to defendant Zentek's confirmed address within **twenty-one (21) days of this Order**, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day after mailing**. If defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service, and he shall

be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendant Zentek shall file his response to the amended complaint, either by means of an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26–37, shall be completed by **July 3, 2019**. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **August 2, 2019**.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)     If Awad changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Awad must give notice of a new address even if he is incarcerated. Awad should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Awad has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Awad should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 4th day of January 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge